May it please the Court. The question before this Court is whether a case becomes moot when a regulatory agency vacates its decision to expel an entity from a program based upon a rules violation after the entity brings suit to challenge the agency's interpretation and application of those rules. Now, what's the basis for our subject matter jurisdiction? Well, there's a Federal question. Under the Declaratory Judgment Act, there is a Federal question as to what the rules are under the Federal 340B program. And that really is at the heart of the controversy, Your Honor. So tell us why that's a Federal question. I thought the only allegation of subject matter jurisdiction here was that there was a final agency action under the APA. In the original petition, that is correct. We challenged the action, the final agency action, and it was more or less based upon the fact that the agency did not give us a hearing. In the amended petition, we included the Declaratory Judgment Act as an additional basis for jurisdiction. The Federal question is interpretation of the 340B statute and particularly the anti-diversion provisions under that act. That's the Federal question. And how that has been — You say that's separate from the APA? Yes, Your Honor. And tell us again where exactly you raised that. Well, Your Honor, we raised it in the amended petition. In paragraphs 27 through 38 of the amended petition, it spells out this controversy over the interpretation of the definition of patient, Your Honor. And then also paragraph 66 and 67 of the amended petition is where we ask for declaratory judgment. And all that is located in the record under the appendix at page 120. And we specifically cite declaratory judgment concerning plain language of the statute. And on paragraph 67, we ask for declaratory judgment, requesting that the court declare the person's interpretation of that statute unlawful and unenforceable. And Your Honor, on the record at page 100, we also — we allege that the action arises under APA and also under the Public Health Services Act and the Fifth Amendment of the United States Constitution. We don't specifically cite the declaratory judgment act in the jurisdictional statement, but we do raise it as a Federal question. And in paragraph 7, we cite 28 U.S.C. 1331, which is a Federal question statute. Did you ever tie any of that to a waiver of sovereign immunity? No, Your Honor. We've not received a defense of sovereign immunity as an affirmative defense in this case. I don't know that there is sovereign immunity in this declaratory judgment action with regard to interpretation of a statute with, you know, agency enforcement of a statute against Genesis, a covered entity under the 340B program. We're not seeking money damages. We're seeking — and we're seeking a declaratory judgment so that we can conform our behavior in compliance with whatever the statute means. And Genesis is actually, you know, there between a rock and a hard place. The statute says one thing. It says a covered entity under 340B, which Genesis is, shall not resell or transfer any drugs to anyone who is not a patient of a covered entity. Genesis interprets patient to be its patients. HRSA under 340B interprets that provision as it only applies to certain patients of Genesis. And those patients that it applies to are only those individuals who received a health care service from a Genesis physician and received a prescription for that service. And they would exclude from the definition of patient anyone who went to a specialist that wasn't referred directly by Genesis and received a prescription from the specialist. And the real bind that Genesis is in because of this is as an FQHC, federally qualified health care center, in which they get federal funding for their mission to provide health care in medically underserved areas and for the poor, they are required if a patient is at the 200 percent poverty level or below to give them a sliding scale discount. If they're 100 percent at the poverty level, Genesis is required to give them free health care. Well, the specialty drugs that are prescribed by specialists are the most expensive drugs. Yet those patients who are at that poverty level are going to come back to Genesis to fill that prescription because they know that Genesis will not charge them and cannot charge them. Yet HRSA says you can't use... There could be a dilemma for somebody that's situated like your client. But as I understand the record, the federal agency applied that rule to your client and then they said, well, we're taking it all back. And they voided all the actions that they had taken against you. So as of now, there is no application of this regulation or interpretation by the agency to your client. Is that correct? There's no formal finding of an application. But Genesis is required every year to submit a certification to HRSA that they are complying with the rules, including the anti-divergent rules. So we have a dispute as to what the definition is. Genesis is... They can proceed dangerously doing what they believe the statute means and run the risk of a 340B death penalty. Or they can toe the line as HRSA says what the line is. Your Honor, this case falls within, squarely within the voluntary cessation line of cases when it comes to mootness. And we've cited in our brief, and I would direct the court to two cases from this court, Pashby, P-A-S-H-B-Y, versus D'Elia, and then Wall v. Wade. And Pashby is a very similar case, Your Honor. The Pashby involved Medicaid benefits administered by the state of North Carolina. And the question was, under Pashby, certain beneficiaries were not being provided benefits for home health care. The Pashby plaintiffs sued. In the course of the suit, the North Carolina Department of Health and Human Services reversed their position and gave them home health care benefits. And then they moved to dismiss the case as being moot. Judge Floyd of this court ruled that it wasn't moot and specifically pointed out that the recipients do not take issue with the practice of reassessment in general, but rather take issue with the eligibility criteria. And the eligibility criteria under Pashby, it was clear that it was going to be subject to reassessment going forward. Here, annually, Genesys has to file a certification that is complying with the rules. Genesys is subject to an audit. Now, in the brief, HRSA says, well, the chances of Genesys receiving an audit is remote because we only audited, I don't know, 13,000 out of 30,000 last year or something along those lines. But the burden under the voluntary cessation line of cases in the Supreme Court and the late law case says it's a heavy burden. And it's the defendant or the person who's claiming mootness has to establish that the challenged conduct will not reoccur in the future. When the government withdrew its sanctions and withdrew the letter withdrawing its regulation of you in this case, did they acknowledge that they had defined patient wrong and were going to define it in a different way in the future? Absolutely not. Absolutely not. So the immediate action which you were seeking to enjoin was avoided, but the declaration about the legality of their definition was not adjudicated? That's exactly correct. And that is what we had requested the lower court to adjudicate in our declaratory judgment action. And the court — Well, you invoked our doctrines attached to injunctions where there's voluntary compliance. Somebody tries to avoid the injunction by voluntary compliance. But you had a claim not only for an injunctive relief, but you had a claim for declaratory relief, and you wanted declared that the inpatient definition that they were applying was contrary to law. That's correct, Your Honor. That's correct. And the district court concluded that the actual controversy between the parties ceased to exist when HRSA voided the audit findings. And as I've touched on here, the controversy still exists, is still active. HRSA has never said, okay, we're not going to apply this definition of patient that we used in the preliminary finding, in the final finding, in the letter approving the cap. And the four times in this case below, they set out their definition of patient and applied it. They vacated everything before we could get to court to challenge whether that definition was the correct definition, and then moved it to be moot. The district court agreed with them. And the district court said without an audit, that would allow this court to review the agency's unlawful definition of patient, and therefore the case is moot. And respectfully, we don't believe it is moot based upon the line of cases regarding voluntary cessation in the face of a challenge. If I'm carrying your argument out, they never voluntarily accommodated the relief you sought in the declaratory judgment. That's exactly right. In other words, that's a different issue altogether from the injunction, which was the government was trying to apply a definition that you contend was illegal. And they didn't want it challenged. But if they said in their letter, we agree with your definition, it would be a different case, right? We wouldn't be here. Absolutely wouldn't be here. But they've not done that. And you know, I would point to the case of, which cited in the brief, it's one of the prison cases. I think it's a death row case. And in that case, the lawyers candidly admitted that we could go back and we could reinstate the conditions that we had previously, and in response to oral argument, I'd be curious what HRSA says today about that. Thank you. If I could ask you one more point. Oh, yes, sir. I understand the thrust of your argument is rises and falls on the application of the voluntary cessation exception to mootness. That's our strongest argument. In our brief, we cited the capable of repetition. And honestly, this is not the classic capable of repetition case. But if they're allowed to do this, just voluntarily cease the conduct, then you're giving up the point that you and I discussed, which was no, sir, didn't involve they didn't. They didn't voluntarily cease from applying the definition. And as far as you know, they're going to continue to apply it. And you have continuing requirements of reporting and so forth. That. And so that was never addressed by their letter. That's correct, Your Honor. I'm not I'm not conceding. No, I'm not changing position on that whatsoever. That's as to mootness, but in that your hardest problem is the final agency action for subject matter jurisdiction. Well, so we have two legs of jurisdiction. We have the Declaratory Judgment Act and and and federal question. And then and then we we do have jurisdiction on the APA. We say we argued that that their interpretation of the term patient and their enforcement of their interpretation is a is a final agency decision that we can review. And that's another leg jurisdictional leg that we're proceeding on. But that would undermine the whole idea of final agency action then, because all you have to do is plead around and say we want a declaratory judgment. They haven't done anything finally, but we want you to tell us what they need to do. But then you would make the rule then a nullity. If you could just plead around it that way. I'm not saying suggesting anything nefarious at all, but I'm but the point is you're saying, OK, accepting we don't have the final agency action. We want to have a declaratory judgment to tell us what they need to do going forward. That's the whole point. It's prevent you from just going forward until they do something. They say, no, we want to enforce this against you. Then it's again before until they do that. Well, they certainly did enforce their interpretation against us and kicked us out of the program. Then we challenge them and they put you back in. You won. Put us back in. We won that part of it. But we did not win and never had addressed the definitional part that got us in the soup in the first instance. And we're still living under the threat of sanctions if we don't tow the line. We don't give advisory opinions. No, this is not an advisory opinion, Your Honor. It's advisory because there's no agency action against you. You want us to advise as to what this means. And therefore, once we do that, you'll say, aha, you can no longer enforce your auditing procedures against us because the court has told you what this means. That's what you want. We're certainly asking for a declaratory judgment and injunctive relief saying you have to, you can't apply your narrow definition that you seek to apply. Absolutely. That's what we're seeking. Thank you. Thank you so much, Mr. Griffin. Mr. Springer. Thank you, Your Honors, and may it please the Court. The audit findings that precipitated this lawsuit have been fully voided. The audit has been closed for several years and Genesis Healthcare was promptly reinstated. Can I ask you about that because that goes to the heart of my questions to your colleague there. The government kicked them out of the program because they were based on a definition of patient that they disagreed with, right? That's correct, Your Honor. In part, as well as not having auditable records. Yeah, right, right. And so they come in and they're now injured. They have a Federal question. I mean, a Federal question. You have an agency action which is to kick them out, sanction them. And they say two things. They seek to enjoin it, to relieve. They seek to enjoin it and they seek a declaratory judgment that your definition is wrong because they're going to continue year after year, be in this program, which is year after year audits which depend on the definition of patient. So they sought a declaratory judgment as to what patient means. You come in and say, we're not going to kick you out of the program. You're back in. Everything we said to you is void. But you did not reverse your position on the word patient. So the question is, you got rid of the immediate sanction, but you didn't eliminate the relief they were seeking, which was you didn't address the patient issue. And you're now saying a court can't do that. But it seems to me that is an issue in the case that is not decided or not resolved by your voluntary withdrawal. You solved part of the problem, but you didn't solve the patient problem. And if you're right that you can resolve the whole thing just by sending the letter and not agreeing with their position, it's hardly a voluntary sensation of what the relief they're seeking. Do you understand my question? The scope of your action is narrower than the scope of the relief that they sought. And so the case has not been fully resolved at this point. If we look at the case at the time it was filed, we have those two reliefs before us, and one of them is to decide the patient. So next year comes around, or the following year comes around, and they continue with their definition of patient, which they think is justified by the law. And you come back and you never said you won't sanction them for that. Your Honor, I think the important point here is that there needs to be final agency action to review. There needs to be an application of the law. Your Honor, how did you enforce it? How did you enforce it? That's a — that — in other words, you're suggesting that your letter is final agency action? I mean, they — you came in with a final agency position and enforced it in the court. And they're challenging that position. And they challenged it not only there, but they also sought an independent declaration under federal question that says you're wrong. And aren't they entitled to have a decision by a court that you were wrong on the definition under a regulation that they — under a continuing — under — they're still subject to that regulation. Your Honor, they're not entitled to a declaration in the abstract, which is what we have here. It's not abstract. This is enforcement. You kicked them out of the program. It cost them money. Your Honor — And they want to be back in the program. You think that is abstract? Your Honor, they've been readmitted to the program, and the agency voided its findings and its — the specific statement that they object to in the March 2018 letter. So you don't want us to decide what the definition of patient is? Your Honor, the reason that it's — it would be improper for the court to decide that in the context of this case is that there's no longer a controversy. And the question of whether someone constitutes a patient — There's a big controversy. You didn't resolve that question. You didn't agree with them. They say patient means patient, and you say patient means a narrower class of patient. And they say the law supports their definition. That's an open dispute, and it affects them because they're under that regulation right now, day to day. Not only that, they have to prove it by audit, year after year. So I don't know why that isn't a live controversy. Your Honor, the other side is asking for an advisory opinion in the abstract divorced from the context of any specific audit findings. Advisory opinion is an opinion that doesn't affect the injury. I mean, this is not advisory at all. They're engaged in this. This is their business. And you've said their business is wrong, but you don't admit you are wrong. You just say, okay, we won't enforce it this time, so to speak. Your Honor, I think the important point here is that the agency's audit findings have been void. Those are not, you know, those are not available to review anymore. And so Genesis is asking this Court to declare. So what are you going to do with their claim? They have a claim, separate claim, identifiable claim that seeks a declaratory judgment. At the time they filed the action, it was a live complaint. I think I suggest it might still be. That's my question. But they alleged that your definition of patient was wrong and that you're enforcing that against us. And we are a regulatory company subject to that regulation and ongoing regulation. Even today as we stand, they're subject to your interpretation of it and they want to change that. And you're saying because we withdrew the initial sanction that we imposed, they can't get that. So tomorrow they go out and they function under a definition of patient, either as they think is what the law specifies or what you say the law specifies. I submit the — I looked at this very briefly, and it didn't look like all the qualifications to the word patient were what was being enforced. But that's an issue for a more fully — full determination. The question now is whether there's a controversy, a live controversy. And I don't know how we address that claim. That's an open claim that has not been decided or voluntarily withdrawn. Your Honor, I agree that the question is whether or not there's a live controversy. And here the controversy went away when the agency voided its audit findings. And what I will say is it's extremely common for Congress to issue a general directive and for the agency or an agency to issue guidance, you know, providing sort of further details but not addressing — Let me follow some of the questions I ask opposing counsels. Is it your view of the case that there's no underlying subject matter jurisdiction because there's no final agency order? And if that's the case, what about opposing counsel's contention that there is subject matter jurisdiction because of the federal question statute? Your Honor, I think there are multiple problems here. One is that there's no longer a final agency action for this Court to review because the action that, you know, initially precipitated — Under the APA, we would have no subject matter jurisdiction at that point. Is that your argument? That's correct, Your Honor. And in addition — And what about the federal question statute? Your Honor, the other side is pointing to the Declaratory Judgment Act, which is just a form of relief and still needs to be present within a particular controversy. And here again, because the agency has specifically voided its audit findings, there's nothing left for the Court to review. You know, and I think one thing that's important is if you look to the sections of the other side's complaint that they pointed to in oral argument today, for example, paragraph 66, what Genesis is seeking is just an abstract judgment about what the context of any particular facts. And in particular, if you — But it alleged all those facts in its petition. I mean, its petition is fulsome. It alleged how it's there, how it affects it, how it operates. There's a full lawsuit. And you didn't make it all go away. You made some of it go away. Your Honor, the petition was based on, at the time, the audit had not been fully voided. When the petition was filed, the audit was still ongoing. Some changes had been made, but the audit was still ongoing. Subsequent — Those are facts, aren't they? They're all live facts. And we determine all those questions at the time the petition's filed. Your Honor, not — not when you're looking at the mootness doctrine. We have to look at what has happened since to see if there is a — Well, mootness doctrine has to mean that the live controversy went away, and that didn't happen. So the jurisdictional question focuses on the complaint when it's filed. Your Honor, I think all of — Your Honor, the — we have to look at sort of both of each other. And here, the thing that Genesis was challenging was the audit findings, which is — Which two things are we looking at in tandem? Your Honor, I think it's both the Article III problem as well as the specific question of whether there's a final agency action for this court to review. And because the agency has — Final agency — if there's no final agency action, at least as far as the APA's concerned, then there's no subject matter jurisdiction. That's correct, Your Honor. It's not a question of mootness at that point. But Genesis has raised other bases that it says grants at jurisdiction in section paragraph 7 of its amended petition. So my question to you is, are none of those valid to grant subject matter jurisdiction? Or if they do, why is the case thereafter moot? Your Honor, I think there's — you can sort of analyze it in two different ways. One is that it's not valid to confer subject matter jurisdiction because with respect just to the Declaratory Judgment Act, Genesis is seeking an advisory opinion in the abstract. At least once you look at this through the lens of mootness in the agency's subsequent invalidation — Look at it at the time the complaint was filed. Was it in the abstract then? Your Honor, at the time, there was a final agency action for Genesis to challenge. The Declaratory Judgment Action under 1331. Your Honor, at that time, yes, it probably would have been a live controversy because of the fact that the agency had applied the law to a specific factual circumstance and had reached a conclusion based on those particular facts. After that happened, the agency — The voiding letters from the agency came after the amended petition was filed?  That's correct, Your Honor. Is that correct? Yes. So now you're in a question that would seem of mootness at that point. That's correct, Your Honor. Yeah, but I thought — into mootness, but also back to Judge Niemeyer's question in terms of because you have a declaratory judgment still standing, well, you had jurisdiction because you had a question about the definition and they were kicked out and all those things were there. But once that went away, to say that jurisdiction continues just because that separate federal question was presented would mean that any agency, like the appellant, could freestand and say, I want a declaratory judgment. Because everybody stands — all the thousands of participating facilities would say, well, I stand with the threat of Audit 2 every year. I want a declaratory judgment. Can you give me your opinion? Can you do that? Could you really do that without a cause? Because that action went away, the part about being kicked out and all. That's gone. What remains is declaratory judgment. Could anyone come up and say, I want the federal court to tell us what patient means? What would your position be on that? No, Your Honor. No one could do that. They wouldn't have a live controversy because there's no impending threat that this law will be enforced against them. And that's exactly the situation we're in here, because the agency has voided its audit findings. So the thing that Genesis was challenging has gone away and they're now asking for a judgment in the abstract, divorced from any continuing controversy between the parties. And I would just like to note that, you know, these questions of whether someone qualifies as a patient are very fact-intensive. And here, the decision was made on a particular set of facts. I mean, just to sort of throw out a couple non-exhaustive factors that matter, there's all kinds of questions about whether or not the covered entity holds medical records for the patient, whether the patient has had a prior relationship or prior visits with the covered entity, whether the healthcare professional is employed by the covered entity, whether there's a contractual or other arrangement, like a referral for consultation. And those are the kind of things that a court would need to look at in order to make a decision within the context of a live controversy about what, you know, who constitutes a patient. Well, let's assume we go a year or two into the future and Genesis has filed whatever its annual report is for the applicable year and they're audited again. Is there any barrier to the federal agency applying the same rules that it did in the initial audit, including the agency's definition of patient? Your Honor, there's no specific barrier, and I don't want to get out ahead of the agency in determining what to do in a future case. But what I would say is that it's possible that even now Genesis' practices have changed, and we would need to look at this dispute. Well, let's just assume everything's the same as it was in the initial audit. It's just later on down the road, chronologies, later year. And the agency applies exactly the same thing it did in the initial audit. It's free to do that. Your Honor, I don't think that there would be any specific barrier to that. But again, it's remote about when that may happen in the future, if ever. And at that time, Genesis would be able to challenge that determination in court and get a ruling to the extent that the agency didn't determine that the audit should be closed. Let me ask you, are they still subject to regulation as we're standing here now? Your Honor, they are subject to the statute. And the same definition that was applied, right? Your Honor, that's the guidance that the agency has issued. It's issued two forms. I know, but I don't want to hedge on these things. I'm saying today they're subject to the same regulation with the same guidance that you enforced earlier. Your Honor, this is non-binding guidance. So I suppose that Genesis does not have to follow it. But this is the normal way that things work out, where an agency issues some kind of guidance to advise the industry about how it thinks it's operating. Are they still subject to regulation today? They're subject to the statute, yes, Your Honor. Okay, they're subject to the statute today. And they're still subject to reporting and conducting business with patients in the form, whatever form, which is undetermined? Your Honor, I suppose the answer is they are required to give a certification each year. Not only certification, but the certification has to reflect conduct, things that they do day in and day out. That's correct, Your Honor. Okay, so day in and day out, they have to determine what patient means. And their reading of the law is different from the agency's reading of the law. And so they're now in this dilemma. This is a real actual problem for them ongoing. Now, the question is, there's another audit in a year, and you'll apply the same guidance, unless you've changed your position. Now, if you've changed your position, you can make the case go away. But if you haven't changed your position, it's going to repeat all over again. Your Honor, there's no reason to think that the agency is just going to continually reopen and close audits against justice. You have regulatory responsibility. You can conduct audits. You have to do them. You may not do them every year, of course. But the fact is they're still subject to it. The audit is just to confirm what they're doing. And at any point in time, you can come back and impose your very same definition. And that's, to me, what's at the heart of the rest of the suit. The declaratory judgment is just trying to clear that up. You may be right or you may be wrong. But this is not something in the abstract. This is happening as we talk. Your Honor, I have two responses to that. The first is that, yes, the agency does conduct audits every year, but it only audits 200 out of 13,000 entities. It's a very small number, and it's a remote possibility about when, if ever, Genesis will be audited again. You're losing my whole purpose. An audit only confirms what they're doing. The point is what they're doing may still violate the law or may be in compliance with the law, as of today. And the fact that there's a potential for an audit, you're saying, oh, it's just a few. But there's a potential for an audit because your responsibility is to confirm that they're complying with the law. They say they are, but you have taken the position that they are not. Not only have you done that, when you withdrew your position earlier and reinstated them, you did not say, we're changing our position, which would have been very comforting to them. Your Honor, I think the problem is that under that logic, anybody who's part of this program could sue the entity or sue the agency. If they're adversely affected, sure. They can challenge it. That's what they're in court for. Your Honor, but I think the important thing is that these controversies need to be decided on a particular set of facts. And here, absent an audit. Oh, my God. They've alleged the facts. They've alleged how they're enforcing it. They've alleged who they've dealt with. They've alleged the problems with the patients going one place and then seeking enforcement from them and, I mean, seeking fulfillment of prescriptions with them. And during that day, this is not — they're still regulated. Your letter didn't eliminate the regulation. And the regulation, they argue, whether they're right or wrong, is illegal. Your Honor, they allege the facts as they were at the time. But it's possible that since then, Genesis has changed its practices in the intervening years. But you can ask them that. That might be a defense. Your Honor, but here, the thing that a court would be reviewing are audit findings. And the agency has specifically voided those audit findings. We would not be reviewing audit findings. We'd be reviewing a definition that the agency's applying against them. Your Honor, I think that's the problem here, is that just reviewing that definition in the abstract is exactly what Article III prohibits. Except you've issued a guidance and you've enforced it. And you say, oh, it's of no moment because we've withdrawn it. So the next year, you're entitled to come in and do an audit. And you've also said there's no barrier for your not following your own guidance again. I don't understand why that isn't a problem. Your Honor, I see that my time has expired. No, you can explain it as you wish. Thank you, Your Honor. I think the important thing here is just that the Article III case or controversy requirement requires that things are decided within, that Genesis's particular rights be embedded in an actual controversy. And here, once the agency voided its audit findings, that controversy went away. And it's not the case that Genesis can just seek in the abstract a definition of patient, particularly when what a patient is depends on the particular facts that are in front of the agency at the time. And here, Genesis is just asking for a free-floating definition of what the word patient means. And that's not something that courts do. Otherwise, there could be a flood of litigation of everybody just suing the agency. We do it all the time. You know, when the prisons try to change their prison conditions and they promise they say they've now changed and they're not going to revert back and they want the case dismissed, we don't let that happen. The fact is they can change again, and we always bring up that possibility. But, Your Honor, here, the agency voided its audit findings, it closed the audit, and it's never reopened an audit in the past. So that possibility of this audit being reopened is essentially off the table. And what Genesis is talking about is just the idea that at some hypothetical point in the future, they may be subject to the same requirement, even though their practice may have changed and may no longer violate the statute. And their practice may have not changed, and they may be pursuing their practice in accordance with their understanding of the word patient. And they're violating your guidance, right? Your Honor, the guidance that was... Is that a question, yes or no? Are they violating your guidance if they follow their own definition? Your Honor, I'm having trouble answering directly yes or no, because the guidance that we're referring to was in a March 2019 letter that was specifically voided. And so the agency could apply the same definition in the future, but that's specifically what Genesis is objecting to that has been voided and is no longer on the table. So are you... I don't want to belabor this, but are you saying that the agency's guidance was only to Genesis? No, Your Honor. The agency had issued general... And then within the context of this specific audit, based on the facts that it was seeing, it told Genesis what it thought the definition of patient was, and it sort of elaborated on its prior guidance. So is this definition of patients part of the 1996 statement, or was it made only in the context of this audit? Your Honor, my understanding is it was made only within the context of this audit. Has the agency enforced its definition, the definition that it enforced against Genesis? Has it enforced that same definition against any other drug company? Your Honor, not to my knowledge. I'm not sure if there's been, you know, if it has, at least I'm not sure that I'm aware of any litigation that's resulted because of it. I'm wondering whether they've enforced it or told somebody that's the way they have to do it. Your Honor, not as far as I'm aware. And as far as I'm aware, it hasn't issued anything publicly that says that that's its position. The only time that it made this statement was within the context of this particular dispute. And I just want to note one final thing that, you know, I think one thing that's important to remember is that regulated entities all the time make decisions about how aggressive to be in conforming their conduct to the law, and to the extent that there are disputes when an agency applies the law to their particular conduct, those disputes can be litigated in court as it could here to the extent that in the future Genesis is ever subject to another audit. Your Honors, if there are no further questions, we would ask that this court affirm the district court. Thank you. Thank you, Mr. Springer. Mr. Griffin, you have some time preserved. Thank you, Your Honor. So before you get started on what you want to tell us, if you could help us with clarification, this guidance on the definition of patient, do we find that anywhere else in the agency's publications other than in the audit letters to you? Your Honor, there is a detailed and tortuous history of HRSA's attempts to define patient, and it's specifically pled in our amended petition starting at paragraph 32, but factually it is in 1993 they proposed guidelines to determine what patient was. Subsequently, they issued additional guidance in the form of a letter that subsequently they withdrew in about 2015. In 1996, they issued additional guidelines. In paragraph 35, HRSA provided no further guidance until 2015, and that's when they which is exactly what they used in our audit. But in 2017, they withdrew that mega guidance. Not sure why, whether it was in the face of a potential challenge or not, but they did. So this definition has existed clearly since 2015, and it's not just for Genesis. And you can go to the What I'm trying to make an analogy to here is probably a poor analogy, but if we're following something in the Code of Federal Regulations, we know we can go look at that. And agencies have all kinds of other advisory, dear colleague, that sort of stuff, publications that they put out. So I'm still not quite sure from your answer whether if we went to find it as a statement of general application to people in your field, would we find that? Your Honor, you could still find to this day one portion of the guidance that is identified in HRSA's brief, and it is I'm trying to point you to the page. In other words, does HRSA still broadcast to the world this is the definition of patient? No. HRSA does not broadcast to the world what was in their 2015 mega guidance. And the 1996 guidance is still out in the public domain. It just talks about what a patient is, and it doesn't tie a patient to the service that ended up with the prescription. But when they are using today their definition of patient, following what we say is the 2015 mega guidance, they cite to the 1996 guidance, but that's not what the 1996 guidance says. And that's why I said, Your Honor, this is tortured. But it's intentionally being tortured in our view by HRSA, and we don't know why. But the fact of the matter is, and I don't think they can just come up with one standard for Genesis and another standard for every other covered entity in the country. Right, but if there's no standard that they have out now, what could you get a declaratory judgment on? They do have a standard. It's an operating standard. It's in their audit guidance. And you see it in the initial audit finding. You see it in the preliminary audit finding. You see it in the final audit finding. You see it in the September audit finding when they reinstated us. And you see it in their letter when they approve the corrective action plan. And they say, But remember, in order to have a patient, it has to be tied to the prescription. And that is... I thought you had answered the question before that would effectively say, forgetting about what they told you in the audit in terms of agency action, agency guidance, that when they had said, whether in 15 or 17, this is what you have to define a patient as, they withdrew that. Not just for you, but for everybody. No, Your Honor. They have... They withdrew that document from the public domain and saying, We're withdrawing the 2017 or the 2015 mega guidance, and we withdrew it in 2017. But they did not stop enforcing that standard, that criteria. And that's what they used when they came to Genesis in 2018. So they're enforcing an unpublished criteria? Yes, they currently are. You're asking the declaratory judgment to really opine on SOP, a standard of procedure, in audit procedures, so we would become accountants? We're asking the court to address the definition of patient, the criteria that is currently, that was being used by HRSA when they did this? That's a fluid question, though, because it's not just defining patient, it's also in the context of how you are applying it. So what you're saying is that, if that's the law, then you get a declaratory judgment, they'll be based upon your particular application, the standards of procedure for your audit, and that would open the door for the other 13,000 people to say, Well, I want that one, too. Let me get a freestanding declaratory judgment. Each one of them would be based on the facts of those things. It's a dynamic. It's not just patient, but it's in the context of how you're using patient. And I understand that, because you have a very clear and a very noble mission you have. Because the point is that these people can't get these drugs if you do it that way. And that's a wonderful policy and human act. But that's broader than, that's a policy question more so than a definition, almost, because it's all intertwined. It makes it difficult for you to operate, I understand it, but you say that can be a freestanding, now, declaratory judgment. That's the question I have. Well, certainly we're getting into evidentiary facts that are not in the pleadings. If you accept the pleadings, which when you do a motion to dismiss, and we have pled that that is the standard that they use, and they have never said we're not using that standard. They didn't say that here today. They said we may or may not use it in the future. They've never disavowed that standard that they used against us, and, frankly, they're using in the industry. On the question of subject matter jurisdiction, declaratory judgment, I just want to point to Judge Harwell's order in record 212 and 213, where he addressed this issue that's now being discussed, that the Declaratory Judgment Act doesn't give an independent basis for jurisdiction. He disagreed. He gives his analysis, and then he goes back to, there's no case or controversy, which we disagree with. And HRSA never argued on this appeal, in their briefs, that declaratory judgment is not an independent basis for jurisdiction. Thank you. Well, the statute requires another statute for jurisdiction. The Declaratory Judgment Act provides a remedy for cases in Federal court, and your jurisdictional thing is a Federal question under 1331. Yes. Talking about Federal law. And that's exactly what Judge Harwell said. He said the court possesses an independent basis for jurisdiction over the parties, for example, Federal question or diversity. And here we've got Federal question. Thank you. Thank you. If I could add one more thing, if it meets with your approval and Judge Niemeyer's, maybe it's just my confusion, but I would like to ask for a 28-J letter from you, which the government can respond to, that tells us where we find, other than in the audit they did for you, this guidance that deals with the definition of patient. Because I'm still unclear whether this is something that's extant, and can be applied to you and all the other people in your field, or whether this ended up sort of being a one-off thing that just came up in your audit. Does that make sense? We're happy to provide that with the court, Your Honor. All right. That would be, I'd appreciate that. Thank you. How soon would you like it? I'm going skiing with my family tomorrow, but I'll have it to the end of next week if that's okay. Sundays? Sunday. Right. Thank you. All right. Counsel, thank you so much for your arguments, and we appreciate it. We can't come down and greet you, but nonetheless we appreciate very much your arguments, and we wish that you will be safe and stay well. With that, Deputy Clerk, would you please adjourn the court for this, not morning and now, but I guess for later this afternoon. This honorable court stands adjourned until 2 o'clock. God save the United States and this honorable court. Thank you. Always a pleasure.
judges: Roger L. Gregory, Paul V. Niemeyer, G. Steven Agee